NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| METLIFE SECURITIES, INC., : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> JOHN PIZZANO, MARIA SOMMA: (individually and as custodian for the: Somma children), ANTONIO SOMMA,: MARIA ROSA DIMARCO, SOMMA: INVESTMENTS LLC, and SOMMA PIZZA, INC. <br> <br> Defendants. | **Hon. Dennis M. Cavanaugh** <br><br> **OPINION** <br><br> Civil Action No. 09-CV-4459 (DMC - MF) |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion for summary judgment pursuant to Fed. R. Civ. P. 56 by MetLife Securities, Inc. ("Plaintiff" or "MetLife"), upon cross-motion to compel arbitration and stay the present matter pending arbitral resolution pursuant to 9 U.S.C. § 3 by John Pizzano, Maria Somma (individually and as custodian for the Somma children), Antonio Somma, Maria Rosa Dimarco, Somma Investments LLC and Somma Pizza, Inc. (collectively, "Defendants") and upon motion for a declaratory judgment and permanent injunction by Plaintiff pursuant to 28 U.S.C. § 2201and Fed. R. Civ. P. 65, respectively. Pursuant to Fed. R. Civ. P. 78, no oral argument was heard. After considering the submissions of all parties, it is the decision of this Court for the reasons herein expressed that Defendants' motion to compel arbitration is **granted**; Plaintiff's motion for a declaratory judgment and permanent injunction is **denied**; and Plaintiff's motion for summary judgment is **denied** as moot.

I. **BACKGROUND**

MetLife is a registered securities broker-dealer which provides investment advice, offers and sells securities and other investment products, and executes securities and other investment transactions on behalf of its customers.

Anthony Luchetto ("Lucchetto") is a former registered representative of MetLife. Luchetto was registered with MetLife as a financial services representative in its Cranford, New Jersey office from November 2003 until his termination on April 1, 2008. MetLife represents that written notice of Lucchetto's termination was forwarded to customers for whom Lucchetto formerly acted as a representative of at MetLife. Further, by filing a Uniform Notice of Termination in accordance with regulatory obligations of FINRA, Luchetto's termination was reported by MetLife and made publicly available on the FINRA website. Consequently, Plaintiff asserts that Lucchetto was unlicensed at the time any transaction occurred between Luchetto and Defendants.

In June 2008, subsequent to Lucchetto's termination from MetLife, Defendants invested money with Luchetto and his company Serafino Holdings LLC ("Serafino"). Defendants contend that their connection to Lucchetto and the prospective "bridge loans" first emerged while Luchetto was still employed with MetLife. On February 6, 2009, Defendants filed a Complaint in the Superior Court of New Jersey, Case No. 0564-09 against Lucchetto and Serafino. That Complaint alleges that Luchetto induced Defendants to invest in "short term loans" placed in a company that was ultimately discovered to be a Ponzi scheme.

On June 23, 2009, Defendants furnished counsel for MetLife with a draft Statement of Claim in arbitration and indicated their intent to file that claim against MetLife. August 28, 2009, Plaintiff filed a Complaint before this Court seeking a declaratory judgment that Plaintiff is not liable to

Defendants pursuant to 28 U.S.C. § 2201. On November 13, 2009, Defendants filed a Statement of Claim pursuant to the rules of FINRA dispute resolution.

## II. LEGAL STANDARD

### A. Summary Judgment

"A court reviewing a summary judgment motion must evaluate the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." Gaston v. U.S. Postal Serv., 2009 U.S. App. LEXIS 5673 (3d Cir. 2009). However, "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

"A party against whom relief is sought may move at any time, with or without supporting affidavits, for summary judgment on all or part of the claim." Fed. R. Civ. P. 56(b). "[T]he burden on the moving party may be discharged by "showing" -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Cartrett, 477 U.S. 317, 325 (1986). "[R]egardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c)." Celotex, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)).

> When a motion for summary judgment is properly made and supported, [by contrast,] an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e)(2). "When the moving party has carried its burden under Rule 56(c), its

opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (internal citations omitted). Indeed, "unsupported allegations in [a] memorandum and pleadings are insufficient to repel summary judgment." See Schoch v. First Fid. Bancorp., 912 F.2d 654, 657 (3d Cir. 1990). Rule 56(e) permits "a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Id. (quoting Lujan v. National Wildlife Fed'n., 497 U.S. 871, 889 (1990)). "It is clear enough that unsworn statements of counsel in memoranda submitted to the court are even less effective in meeting the requirements of Rule 56(e) than are the unsupported allegations of the pleadings." Schoch, 912 F.2d at 657.

  B.  Federal Arbitration Act ("FAA") 9 U.S.C. §§ 1, *et seq.*

"The Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.*, ("FAA") creates a body of federal substantive law establishing and governing the duty to honor agreements to arbitrate disputes." Century Indem. Co. v. Certain Underwriters at Lloyd's, 584 F.3d 513, 522 (3d Cir. 2009) (citing Harris v. Green Tree Fin. Corp., 183 F.3d 173, 176 (3d Cir. 1999)). Pursuant to 9 U.S.C. § 4, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28 [28 U.S.C. §§ 1, et. seq.] in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement." "Before compelling a party to arbitrate pursuant to the FAA, a court must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement." Id. at 523. Pursuant

to 9 U.S.C. § 3:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

**III.   DISCUSSION**

   A.   Arbitration

Pursuant to Rule 12200 of FINRA, parties must arbitrate a dispute under the Code if:

• Arbitration under the Code is either:
   (1) Required by a written agreement, or
   (2) Requested by the customer;

• The dispute is between a customer and a member or associated person of a member; and

• The dispute arises in connection with the business activities of the member or the associated person, except disputes involving the insurance business activities of a member that is also an insurance company.

With respect to the first requirement, Defendants concede that there was no written agreement with MetLife. Nonetheless, Defendants argue that in relation to MetLife, and in accordance with the definition of "customer" promulgated by FINRA and its predecessor, the National Association of Securities Dealers ("NASD"), Defendants qualify as customers. Defendants assert, and Plaintiff does not dispute, that Plaintiff is a member firm of FINRA and, therefore, subject to the terms and provisions of FINRA.

In reliance upon the Eleventh Circuit case of <u>Wheat, First Sec., Inc. v. Green</u>, indicating that

customer status is determined at the time of the events providing the basis for the allegations of fraud, accordingly, Plaintiff contends that Defendants do not qualify as customers because Lucchetto did not actively solicit Defendants to invest in bridge loans until at least two months after his termination of employment at MetLife.  Further, in support of this position, Plaintiff cites to Hornor, Townsend & Kent, Inc. v. Hamilton, 2004 U.S. Dist. LEXIS 20789, *5 (N.D. Ga. Sep. 30, 2004) where the Court recognized that "if the sale occurred at a time when Tommy Fountain was not employed by HTK, the latter cannot be hauled into an arbitration proceeding convened to adjudicate the Hamiltons' complaint about the propriety of the sale."

The definition of "customer" under FINRA speaks in terms of exclusion, namely a "customer shall not include a broker or dealer." FINRA 12100.[1]  The Third Circuit has not adopted a particular interpretation of the term "customer" under FINRA.  According to the Eighth Circuit Court of Appeals, "[a]lthough other cases interpreting the term 'customer' have in some ways taken a broad view of the term, in all of these cases there existed some brokerage or investment relationship between the parties." Fleet Boston Robertson Stevens, Inc. v. Innovex, Inc., 264 F.3d 770, 772 (8th Cir.2001).  However, the Court concluded that while a customer is "one involved in a business relationship with [a FINRA] member that is related directly to investment or brokerage services,"

---

[1] There are two other National Association of Securities Dealers ("NASD") rules, adopted by FINRA, that define the term customer. See NASD Conduct Rule 2270(b) (defining "customer" as "any person who, in the regular course of such member's business, has cash or securities in the possession of such member"); NASD Conduct Rule 2520(a)(3) ("[T]he term 'customer' means any person for whom securities are purchased or sold or to whom securities are purchased or sold."). However, these rules are expressly limited in application to these particular sections of the NASD Code of Conduct. J.P. Morgan Secs. v. La. Citizens Prop. Ins. Corp., 2010 U.S. Dist. LEXIS 42953, *16 n.42 (S.D.N.Y. Apr. 30, 2010).

merely "providing banking and financial advice does not create a customer relationship." J.P. Morgan, 2010 U.S. Dist. LEXIS 42953 at *17-18.  In Herbert J. Sims & Co. v. Roven, 548 F. Supp. 2d 759 (N.D. Cal. 2008), the Court acknowledged that in Brookstreet Sec. Corp. v. Bristol Air, Inc., 2002 U.S. Dist. LEXIS 16784 (N.D. Cal. Aug. 5, 2002), "a customer relationship was typically created between a member firm and a third party when 'the individual who solicited the investments or provided investment advice to the purported 'customers' was a representative or employee of the broker.'"

At the same time, in Goldman Sachs & Co. v. Becker, the Court recognized that "[i]n order for someone to be a 'customer,' there must be some nexus between the investor and the member or associated person in order for a party to take advantage of the NASD arbitration provision." 2007 U.S. Dist. LEXIS 51359, *15 (N.D. Cal. July 2, 2007) (Other courts "have interpreted 'customer' to require the purchase of securities from that NASD member, or to require at least some informal business relationship between the parties.") (quoting Malak v. Bear Sterns & Co., Inc., 2004 U.S. Dist. LEXIS 1422 (S.D.N.Y. Jan. 29, 2004).  In accordance with the Second Circuit Court of Appeals case John Hancock Life Ins. Wilson, if "an 'associated person' of the member firm induces, or shepherds, the investment, then the investor is also likely a customer of that firm." Herbert, 548 F. Supp. 2d at 764 (citing John Hancock, 254 F.3d 48, 59 (2d Cir. 2001) (holding that a customer relationship with an associated person is sufficient to establish a customer relationship with the member firm itself)).

Concerning the second and third requirements, pursuant to the Code, the term "person associated with a member" means:

> (1) A natural person who is registered or has applied for registration under the Rules of FINRA; or

>  (2) A sole proprietor, partner, officer, director, or branch manager of a member, or other natural person occupying a similar status or performing similar functions, or a natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by a member, whether or not any such person is registered or exempt from registration with FINRA under the By-Laws or the Rules of FINRA.
>
>  For purposes of the Code, a person formerly associated with a member is a person associated with a member.

Given that any ambiguity with respect to FINRA is to be resolved in favor of arbitration, in the absence of a more concise definition of the term "customer" under FINRA, the Court is compelled to apply a flexible standard. John Hancock, 254 F.3d at 59. Undeniably, Lucchetto, a former registered agent of Plaintiff, terminated two months prior to the alleged misconduct, is a person formerly associated with a member and, therefore, for purposes of the Code, Lucchetto qualifies as a person associated with a member. The parties do not dispute that Defendants were customers of Lucchetto. Consequently, regardless of whether Defendants constitute actual customers of Plaintiff, for purposes of the Code, Defendants are undeniably customers of a person associated with Plaintiff. With respect to the second and third requirements, therefore, the dispute arises between a customer and person associated with a member in connection with that associated person's business activities.[2] Therefore, the motion to compel arbitration and stay this action is **granted.**

B.   Summary Judgment

Given that this dispute requires arbitration in accordance with the terms of FINRA, Plaintiff's motion for summary judgment has been rendered moot.

---

[2] Nothing in this Opinion is to be construed as substantive analysis concerning the merit of the underlying claims. This Opinion is confined to the issue of whether the present matter is subject to arbitration in accordance with the terms of FINRA.

**IV.    CONCLUSION**

For the foregoing reasons, Defendants' motion to compel arbitration is **granted;** Plaintiff's motion for a declaratory judgment and permanent injunction is **denied**; Plaintiff's motion for summary judgment is **denied** as moot; and this action is stayed pending the conclusion of arbitral proceedings. An appropriate Order accompanies this Opinion.

 S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Dated:      June   18  , 2010
Original:   Clerk
cc:         All Counsel of Record
            Hon. Mark Falk, U.S.M.J.
            File